[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 24, 2005
THOMAS K. KAHN
CLERK

No. 04-13398
Non-Argument Calendar

_____

D.C. Docket No. 04-20083-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOEL CARTWRIGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 24, 2005)

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Joel Cartwright appeals his 87-month sentence, imposed after pleading

guilty to conspiracy to possess with intent to distribute one thousand kilograms or

more of marijuana and a detectable amount of hashish, in violation of 42 U.S.C. section 1903(j). Among other things, Cartwright appeals the application of an enhancement for acting as a "pilot, copilot, captain, navigator, . . . or any other operation officer" on a boat carrying controlled substances. U.S.S.G. § 2D1.1(b)(2)(B). Although we decline to adopt a rigid definition of the terms in the enhancement, we conclude that Cartwright's admission that he navigated the vessel established that the enhancement was warranted. We also reject Cartwright's argument under United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), that the district court plainly erred when it applied the enhancement under a mandatory guideline system. We affirm.

## I. BACKGROUND

On January 21, 2004, Joel Cartwright, a lifelong fisherman, left Jamaica on a go-fast boat that contained more than one thousand kilograms of marijuana and hashish. Two other individuals were with Cartwright on the boat: John Bailey, an experienced mechanic, and Phillip Brown, a deck hand. On January 22, 2004, a Cuban border guard reported a go-fast boat that appeared to be loaded with bales of marijuana. An Immigrations and Customs Enforcement aircraft was sent to locate the boat.

The boat, with Cartwright at the helm, was found northeast of Cuba by the United States Coast Guard. As the Coast Guard helicopters and boats approached, Cartwright attempted to evade capture and sped towards Cuba as Bailey and Brown threw marijuana and hashish into the water. After the helicopter crew disabled the boat's engines, the Coast Guard boarded the boat.

On February 5, 2004, a federal grand jury returned a three-count indictment against Cartwright, Bailey, and Brown. On April 7, 2004, with the benefit of a plea agreement, Cartwright pleaded guilty to Count One of the indictment: conspiracy to possess with intent to distribute one thousand kilograms or more of marijuana and hashish aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. sections 1903(a), (g) and (j) and 21 U.S.C. sections 960(b)(1) and (b)(3). The government dismissed the remaining two counts of the indictment.

The Presentence Investigation Report (PSI) identified a base offense level of 32. Among other things, the PSI included a two-level enhancement because Cartwright "acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance." U.S.S.G. § 2D1.1(b)(2)(B). Cartwright objected to this portion of the PSI and argued that his "boating skills stem from his life experience and do not constitute a

'special skill' for which this enhancement is intended to apply." Cartwright again objected to the two level enhancement under section 2D1.1(b)(2)(B) at the sentencing hearing on June 25, 2004. The district court heard testimony from Cartwright on the enhancement. Cartwright admitted that he was at the helm of the boat when he left Jamaica and when the boat was disabled by the Coast Guard. Cartwright insisted, however, that all three men spent time driving the boat. Cartwright testified that he navigated using instructions and a compass.

Cartwright's attorney argued that Cartwright was not the captain because he lacked formal training and because each man took turns driving the boat. The court asked if the enhancement applied to "anybody who operates a vessel that contains controlled substances," and the government responded affirmatively. The court then concluded that Cartwright admitted to the facts that warranted the enhancement. The district court sentenced Cartwright at the low end of the guideline range to 87 months' imprisonment and three-years' supervised release.

Cartwright timely filed a notice of appeal on July 2, 2004. On that same day, Cartwright filed a motion under Rule 35(a) to vacate the enhancement under section 2D1.1(b)(2)(B) because the enhancement violated his right to trial by jury under the Sixth Amendment. Cartwright cited Blakely v. Washington, 542 U.S.

4

__, 124 S. Ct. 2531 (2004), which was decided the day before Cartwright's sentencing hearing. The district court denied the motion on July 20, 2004.

## II.  DISCUSSION

Cartwright raises three issues on appeal. Cartwright first challenges the finding of the district court that his admission to steering the boat that carried a controlled substance warranted a two-level enhancement under U.S.S.G. section 2D1.1(b)(2)(B). Cartwright next challenges the denial of his motion under Rule 35 of the Federal Rules of Criminal Procedure to correct his sentence for clear error. Finally, Cartwright contends that the imposition of the enhancement violated his Sixth Amendment rights because the enhancement was based on facts found by the judge and not by the jury. We address each argument in turn.

### A.  U.S.S.G. Section 2D1.1(b)(2)(B)

Cartwright argues that the district court erred when it interpreted U.S.S.G. section 2D1.1(b)(2)(B) to include anyone who operates a vessel. He concedes that he admitted to driving the boat, but contends that the enhancement does not apply to individuals who merely drive a boat containing contraband. Cartwright argues that to qualify for the enhancement one must be in a position of authority or in charge, as an officer, and the evidence showed that Cartwright was not in a

position of authority. All three men took turns driving the boat, and they were acting at the instruction of a fourth individual who arranged the trip. We review a finding of fact by the district court for clear error and its application of the Sentencing Guidelines de novo. See United States v. Crawford, __ F.3d __, 2005 WL 1005280, at *3-4 (11th Cir. May 2, 2005).

Only this Court and two other circuits have confronted this issue, and all have declined to adopt a narrow definition of the terms in section 2D1.1(b)(2)(B). See United States v. Rendon, 354 F.3d 1320, 1329 (11th Cir. 2003); United States v. Senn, 129 F.3d 886, 896-97 (7th Cir. 1997); United States v. Guerrero, 114 F.3d 332, 346 (1st Cir. 1997). Instead, the circuits have examined the facts of each case and applied a functional definition of the terms "captain" and "pilot." Although only our precedent is binding, the decisions of our sister circuits are especially persuasive, as we relied on them in our earlier decision. See Rendon, 354 F.3d at 1329.

Our precedent establishes that the enhancement creates a test about the facts of the offense, not a term of art. In United States v. Rendon, we concluded that the district court properly applied the enhancement where the defendant identified himself as the captain to the Coast Guard and his co-defendants testified that they considered the defendant to be the captain because he navigated the boat, he was

6

the only crew member who knew its course, and he hired the crew and directed their operations on board. Id. The Court found that "Rendon was the captain in an employment, navigational, and operational sense." Id.

The First Circuit similarly concluded that section 2D1.1(b)(2)(B) turns on the facts of the criminal offense, not the possession of a professional license. In United States v. Guerrero, the First Circuit upheld an enhancement for the defendant's actions as the "pilot" of a ship carrying drugs. 114 F.3d 332, 346 (1st Cir. 1997). The defendant, who possessed no "special navigational rank or skills," was "hired by a man looking for 'any seaman who was available to navigate.' When the ship set sail, he complied with . . . instruction[s] to 'take care of the helm,' which [he] manned for a four hour shift." Id. at 346 n.15. The defendant testified that he "was told [he] was in charge of the helm, which was [his] profession." Id. (emphasis omitted). The First Circuit examined the plain meaning of section 2D1.1(b)(2)(B) and stated that "the common dictionary definition of 'pilot' includes a person hired to steer a vessel." Id. at 346. The court rejected the defendant's assertion that the enhancement applied only to individuals who possessed "special navigational rank or skills." Id. The court, therefore, concluded that the district court did not plainly err when it found that

the defendant "'acted as a pilot' aboard a boat within the meaning of" the enhancement. Id.

The Seventh Circuit also determined that the plain meaning of section 2D1.1(b)(2)(B) controls. In United States v. Senn, the Seventh Circuit concluded that a defendant only needed to "act as" a captain to warrant the sentence enhancement under section 2D1.1(b)(2)(B). 129 F.3d 886, 896-97 (7th Cir. 1997). The court stated that "[t]he use of 'acted as' suggests that we should look at conduct and not just at training or licensure. In the end, therefore, the plain language of the statute carries the day." Id. at 896. Because the defendant stated that "he would 'captain the trip,' he listed himself as the captain on Customs documents, and he directed the operations of the vessel," the Seventh Circuit concluded that the district court properly applied the enhancement. Id. at 897.

In the light of these precedents and the record, Cartwright easily qualified for the enhancement. Cartwright admitted that he was a lifelong fisherman; he drove the boat as it left Jamaica; and he was driving the boat when the Coast Guard boarded it. In addition, Cartwright followed instructions on where to steer the boat and used a compass to navigate. That Cartwright was not officially named the captain or pilot is not dispositive. Moreover, that Cartwright's conspirators also steered the boat does not change our analysis because the

8

enhancement explicitly includes "copilots." The district court did not clearly err when it found that Cartwright's admitted actions established that he "acted as a pilot, copilot, captain, navigator, . . . or any other operation officer aboard any . . . vessel carrying a controlled substance." U.S.S.G. § 2D1.1(b)(2)(B).

### B. Motion under Rule 35

Although Cartwright argues that the district court erred when it denied his motion under Rule 35(a) for correction of his sentence due to clear error under Blakely, we do not have jurisdiction to review this claim. We must resolve jurisdictional issues before we address the merits of the underlying claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-102, 118 S. Ct. 1003, 1012-16 (1998). We have an obligation to review sua sponte whether we have jurisdiction at any point in the appellate process. See Finn v. Prudential-Bache Sec., Inc., 821 F.2d 581, 584-85 (11th Cir. 1987). We review questions of jurisdiction de novo. See Milan Express, Inc. v. Averitt Express, Inc., 208 F.3d 975, 978 (11th Cir. 2000).

Federal Rule of Appellate Procedure 4 requires a criminal litigant who makes an appeal as of right to file a notice of appeal "within ten days after the later of . . . the entry of the judgment or the order being appealed . . . ." See Fed. R. App. P. 4(b)(1)(A)(i). Absent the filing of a timely notice of appeal, a Court of

Appeals is "without jurisdiction to review the decision on the merits." Budinich v. Becton Dickinson & Co., 486 U.S. 196, 203, 108 S. Ct. 1717, 1722 (1988). Federal Rule of Appellate Procedure 3 governs the required contents of a notice of appeal and demands that the notice "designate the judgment, order, or part thereof appealed from . . . ." Fed. R.App. P. 3(c). Cartwright filed his notice of appeal on July 2, 2004, which stated that he appealed from "the Final Judgment of Sentence." Contemporaneously with the notice of appeal, Cartwright filed a "motion for correction of sentence to vacate sentence increase" under Rule 35(a). The district court denied that motion on July 20, 2004. Cartwright did not file a new notice of appeal or amend the July 2, 2004, notice to include the order of July 20, 2004. We, therefore, lack jurisdiction to consider an appeal of this order.

### C. Booker Objection

Under United States v. Booker, there are two kinds of sentencing errors: one is constitutional and the other is statutory. "[T]he Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." United States v. Rodriguez, 398 F.3d 1291, 1297 (11th Cir. 2005). In addition, "[a]s a result of Booker's remedial holding, Booker error exists when the district court misapplies

10

the Guidelines by considering them as binding as opposed to advisory." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

Although Cartwright made an objection under Booker in the district court in his motion under Rule 35(a), as explained above, that objection is not part of this appeal. Our review, therefore, is limited to plain error. See Rodriguez, 398 F.3d at 1298. Under plain error review, appellate courts have "a limited power to correct errors that were forfeited because [they were] not timely raised in [the] district court." United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 1776 (1993) (citing Fed.R.Crim. P. 52(b)). We "may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Rodriguez, 398 F.3d at 1298 (quotations and citations omitted).

As to the alleged constitutional error, the district court did not commit an error when it applied the enhancement. As discussed above, Cartwright admitted that he drove the boat as it left Jamaica and that he was driving when the Coast Guard boarded the boat. Cartwright also admitted that he followed instructions on where to steer the boat and used a compass to navigate. Because Cartwright

11

admitted to all the facts that warranted the enhancement, the district court did not commit a constitutional error under Booker. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005). We still must consider , however, whether the district court erred when it applied the Guidelines as mandatory.

As to the statutory error, the first and second prongs of the plain error test are easily satisfied. The district court erred when it sentenced Cartwright because it considered the Guidelines to be mandatory. See Shelton, 400 F.3d at 1330-31. As the Supreme Court explained in Booker, the Guidelines are properly applied in an advisory fashion. Because this error was plain "'at the time of appellate consideration,'" the second part of the plain error analysis also is met. Rodriguez, 398 F.3d at 1299 (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549 (1997)).

As to the third prong, the burden is on Cartwright to demonstrate that the plain error "affects [his] substantial rights," and that the error "actually did make a difference." Rodriguez, 398 F.3d at 1298. If we have to speculate concerning the result in the district court without the error, then "the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected." Id.

12

at 1301. In other words, in post-Booker sentencing appeals, "in applying the third prong, we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Id. at 1300. Cartwright has not established that the error affected his substantial rights.

Cartwright has not presented any evidence that he was prejudiced by the mandatory nature of the guidelines. Although the district court imposed the lowest sentence in the guideline range, we have held that this fact alone "does not establish a reasonable probability that the court would have imposed a lesser sentence under an advisory regime." United States v. Fields, __ F.3d __, No. 04-12486, at *8-9 (11th Cir. May 16, 2005). Cartwright, therefore, failed to establish that the plain error "affect[ed] [his] substantial rights" or that the error "actually did make a difference." Rodriguez, 398 F.3d at 1298.

## III.  CONCLUSION

Because we conclude that the facts admitted by Cartwright established that the enhancement under U.S.S.G. section 2D1.1(b)(2)(B) was warranted and because Cartwright failed to establish that he was prejudiced by the mandatory nature of the guidelines, we affirm Cartwright's sentence.

**AFFIRMED.**

13