[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-13896
Non-Argument Calendar
_____

D. C. Docket No. 04-20038-CR-DLG

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 6, 2005
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARTURO HERRERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 6, 2005)

Before BIRCH, HULL and WILSON, Circuit Judges.

PER CURIAM:

Arturo Herrera ("Herrera") appeals his 23-month sentence, imposed after he pled guilty to one count of illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). We find that the district court did not commit plain error in applying the Guidelines in a mandatory fashion, because Herrera failed to show that his substantial rights were affected, or in imposing an eight-level enhancement under U.S.S.G. § 2L1.2(b)(1)(c), because the record reflected that Herrera had previously been convicted of a drug offense that qualified as an aggravated felony. Accordingly, we **AFFIRM**.

## I. BACKGROUND

Herrera was indicted by a federal grand jury for: (1) illegally re-entering the United States after deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(2); and (2) representing himself as a United States citizen to gain entry into the United States, in violation of 18 U.S.C. § 911. Via a plea agreement, Herrera, pled guilty to Count 1 of the indictment. The government agreed to dismiss the remaining count.

At Herrera's change-of-plea hearing, the government asserted that the evidence indicated: (1) that Herrera was deported on or about 1 March 1996; (2) that he was removed from the United States on 27 January 1999; (3) that he had previously been convicted of an aggravated felony; and (4) that he attempted to

enter the United States again. Herrera admitted these facts except to the extent that the government alleged that he had previously been convicted of an aggravated felony, and he pled guilty to the first count.

According to the presentence investigation report ("PSI"), Herrera's base offense level was 8, pursuant to U.S.S.G. § 2L1.2. The PSI added eight additional levels, under § 2L1.2(b)(1)(c), because Herrera previously had been deported or unlawfully remained in the United States after a conviction for an aggravated felony. Three levels were deducted from the base offense level to reflect Herrera's acceptance of responsibility, under U.S.S.G. § 3E1.1(a) and (b). The resulting total offense level was calculated to be 13. The PSI indicated that Herrera's previous convictions placed him in a criminal history category of III. Accordingly, the PSI indicated that the corresponding guideline range was 18 to 24 months. In describing Herrera's prior criminal history, the PSI referenced, inter alia, a previous conviction for criminal possession of a controlled substance in New York. The PSI indicated that in 1988, Herrera was found guilty and sentenced to 4 years of imprisonment. The PSI did not indicate, however, the statute which Herrera was convicted of violating. Neither Herrera nor the government filed objections to the contents of the PSI.

At sentencing, the district court asked whether the parties objected to any aspect of the PSI, and Herrera indicated that he did not. The court then adopted the findings of fact and conclusions of law contained in the PSI. The court sentenced Herrera to 23 months of imprisonment and 3 years of supervised release.

## II.  DISCUSSION

On appeal, Herrera maintains that the district court imposed a sentence within the guideline range, and included a term of supervised release, because it understood the Guidelines to be mandatory. He argues that had the court treated the Guidelines as merely advisory, it might have exercised its discretion to impose a lesser sentence. Herrera contends that "[t]o say that [he] would receive the same sentence – including the guideline-mandatory 3-year supervised release term – absent the guideline range is speculative at best, and on this record, most unlikely." Appellant's Brief at 10. Herrera contends that the PSI failed to consider the sentencing factors listed in 18 U.S.C. § 3553 when recommending a sentence. Accordingly, he maintains, his substantial rights were affected, and a resentencing is warranted.

In response, the government asserts that the district court erred under United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), only in believing mistakenly that it was required to apply the guidelines in a mandatory fashion.

4

Because Herrera did not object below to the imposition of a guideline sentence, the government contends that we should review his sentence for plain error only. The government concedes that this Booker error was plain but argues that Herrera has not shown that the error affected his substantial rights because the facts supporting his sentencing enhancement were essentially uncontroverted. Furthermore, the government maintains, Herrera has not demonstrated that there is a reasonable probability that the district court would have imposed a different sentence had it considered the Guidelines advisory rather than mandatory In fact, the government asserts, the fact that the district court imposed a sentence near the top of the guideline range indicates that it is not likely that the court would have imposed a lower sentence under advisory guidelines. Finally, the government contends that Herrera has not demonstrated that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

Because Herrera did not raise a constitutional challenge to his sentence in the district court, we review his appellate claims regarding the constitutionality of his sentence only for plain error. United States v. Shelton, 400 F.3d 1325, 1328 (11th Cir. 2005). To satisfy the plain-error standard, we must find that (1) the district court committed "error," (2) the error was plain or obvious, and (3) the error "affected substantial rights." Id. at 1328-29. If these criteria are met, we

5

may, in our discretion, correct the plain error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1329 (citation and internal quotation omitted).

In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000). In Blakely v. Washington, the Court held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at ___, 124 S. Ct. 2531, 2537 (2004) (citation omitted).

After the sentencing in the instant case, the Supreme Court issued its decision in Booker and found "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely. Booker, 543 U.S. at ___, 125 S. Ct. at 749. Resolving the constitutional question left open in Blakely, the Court held that the mandatory

nature of the Guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at ___,125 S. Ct. at 749-51. In extending its holding in Blakely to the Guidelines, the Court explicitly reaffirmed its rationale in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at ___, 125 S. Ct. at 756.

In a second and separate majority opinion in Booker, Justice Breyer concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence to be within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the Sentencing Guidelines advisory only. Id. at ___, 125 S. Ct. at 764. The Court indicated that both its "Sixth Amendment holding and . . . remedial interpretation of the Sentencing Act" must be applied to "all cases on direct review." Id. at ___, 125 S. Ct. at 769.

As we have explained, there are two types of Booker errors: (1) Sixth Amendment error based upon sentencing enhancements neither admitted by the

7

defendant nor submitted to a jury and proven beyond a reasonable doubt; and (2) statutory error based upon sentencing under a mandatory Guidelines system. Shelton, 400 F.3d at 1329-31. In the instant case, the district court applied the Guidelines in a mandatory fashion. However, the only enhancement applied to Herrera's sentence reflected a prior conviction. The Booker court specifically indicated that only facts other than prior convictions must be admitted by the defendant or proved to a jury beyond a reasonable doubt, 543 U.S. at ___, 125 S.Ct. at 756, and we recently held that "there is no Sixth Amendment violation when a district court enhances a sentence based on prior convictions." United States v. Gallegos-Aguero, __ F.3d __, __ (11th Cir. May 18, 2005). Accordingly, the imposition of the enhancement to reflect Herrera's prior conviction was not constitutional Booker error.

As to a district court's statutory error, a defendant meets the first and second prongs of the plain error test if the district court considered the Guidelines to be mandatory at the time of sentencing and if the error was plain at the time of appellate consideration. United States v. Cartwright, __ F.3d __, __ (11th Cir. June 24, 2005). To satisfy the third prong of plain error, the defendant must demonstrate that the error "'affects [his] substantial rights,' and that the error 'actually did make a difference.'" Id. (quoting United States v. Rodriguez, 398

8

F.3d 1291, 1298 (11th Cir.), cert. denied, 73 U.S.L.W. 3531 (June 20, 2005) (No. 04-1148)).  In other words, the defendant must show that "'there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion . . .'"  Id. (quoting Rodriguez, 398 F.3d at 1300).

In this case, the district court's application of the Guidelines in a mandatory fashion constituted Booker error, and the error is now plain.  Id. at __.  However, we conclude that Herrera failed to satisfy the third prong of plain error.  Herrera has not shown, and the record does not indicate, that he would have received a lesser sentence had the district court considered the Guidelines advisory as opposed to mandatory.  The court sentenced Herrera towards the upper end of the guideline range, 23 months, and without a clear statement or sign from the district court that it would have imposed a lighter sentence but for the fact that its discretion was constrained under the Guidelines, we can only speculate as to the likelihood of a different result.  Herrera, therefore, has not met his burden of showing a reasonable probability that the result of his sentencing would have been different but for the Booker error, and we need not apply the fourth prong of the plain error standard.

Additionally, Herrera asserts that the district court plainly erred in determining that he qualified for an eight-level enhancement under U.S.S.G. §

9

2L1.2(b)(1)(c), because nothing in his criminal history constitutes an aggravated felony. If this enhancement was imposed to reflect his prior conviction of "criminal possession of a weapon," he asserts, the record fails to support the enhancement because the government did not meet its burden of showing that the offense qualified as a crime of violence, and none of the categories of aggravated felonies apply to the weapon possession conviction at issue. Appellant's Brief at 18-19. Herrera further asserts that his prior conviction for simple possession of a controlled substance would not qualify as a "'drug trafficking crime'" under U.S.S.G. § 2L1.2(b)(1). Id. at 20. Because the record does not indicate which offense the PSI relied upon in adding the eight-level enhancement, he contends, the district court plainly erred in imposing the enhancement, and this Court should remand for resentencing.

We review the district court's interpretation of the Sentencing Guidelines de novo. United States v. Simon, 168 F.3d 1271, 1272 (11th Cir. 1999). Objections to sentencing issues that are not raised at the district court, however, are reviewed for plain error to avoid manifest injustice. United States v. Harness, 180 F.3d 1232, 1234 (11th Cir. 1999). Because Herrera did not dispute the imposition of the eight-level enhancement in the district court, we review for plain error.

10

The government bears the burden of establishing that a sentence enhancement is warranted. United States v. Hernandez, 145 F.3d 1433, 1440 (11th Cir. 1998). U.S.S.G. § 2L1.2 (unlawfully entering or remaining in the United States) is the guideline applicable to the offense of being illegally found in United States after deportation, 8 U.S.C. § 1326. See U.S.S.G. App. A. In detailing the applicable specific offense characteristics, § 2L1.2 indicates that if the defendant previously was deported after a "conviction for an aggravated felony," the base offense level should be increased by eight levels. U.S.S.G. § 2L1.2(b)(1)(c). The commentary to § 2L1.2 defines "aggravated felony" as it is defined in 8 U.S.C. § 1101(a)(43), which, in turn, defines "aggravated felony" as "including a drug trafficking crime (as defined in section 924(c) of Title 18)." See U.S.S.G. § 2L1.2, comment. (n.3(A)); 8 U.S.C. § 1101(a)(43)(B). Section 924(c)(2) defines the term "drug trafficking crime" as including "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. § 1901 et seq.)." 18 U.S.C. 924(c)(2).

In Simon, we held a drug offense falls within the definition of "drug trafficking crime" in § 924(c)(2), and thus fits within the definition of aggravated felony, if two criteria are met: (1) the offense must be punishable under one of the

11

three enumerated statutes, including the Controlled Substances Act ("CSA"); and (2) the offense must be a felony. Simon, 168 F.3d at 1272. The CSA defines the term "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13).

In the instant case, the district court did not plainly err in imposing the eight-level enhancement. As Herrera argues, the record contains virtually no information about Herrera's previous conviction. The PSI indicated that the eight-level enhancement was warranted under § 2L1.2(b)(1)(c), but did not specify which of Herrera's previous convictions justified the enhancement. On appeal, the government explains on appeal that Herrera's 1988 New York conviction for criminal possession of a controlled substance constituted an aggravated felony. The PSI referenced that conviction by indicating that Herrera was found guilty and sentenced to four years of imprisonment for "Criminal Possession of a Controlled Substance," but it did not indicate which New York statute Herrera violated. PSI ¶ 25.

Nevertheless, Herrera's conviction satisfies the two criteria enumerated in Simon. First, possession of a controlled substance is an offense punishable under the CSA. See 21 U.S.C. § 844. Second, Herrera's conviction was a felony under New York law because he was sentenced to more than four years of imprisonment.

12

See N.Y. PENAL LAW §§ 55.10, 70.15 (penalties for class A, class B, and unclassified misdemeanors do not exceed one year). Accordingly, the district court did not plainly err in applying the enhancement to Herrera's sentence. See Simon, 168 F.3d at 1272.

In his brief, Herrera asserts that the conviction for simple possession cannot qualify as a drug trafficking crime under U.S.S.G. § 2L1.2(b)(1). However, the conviction was not considered a "drug trafficking offense" under § 2L1.2(b)(1)(A) or (B), but rather an "aggravated felony" under § 2L1.2(b)(1)(c). See PSI ¶ 10. Finally, Herrera's reliance upon the Supreme Court's recent decision in Shepard, __ U.S. __, 125 S. Ct. 1254, is misplaced. In Shepard, the Supreme Court held that a district court considering prior convictions for the purpose of sentencing a defendant under 18 U.S.C. § 924(e), the career criminal provision, could look to statutory elements, charging documents, and jury instructions, but not to police reports or complaint applications, to determine whether an earlier conviction qualified as a violent felony. Shepard, __ U.S. at __, 125 S. Ct. at 1257. In the instant case, the district court did not consider any documents that the Supreme Court deemed to be inappropriate, because, as discussed above, the fact that Herrera's previous conviction qualified as an "aggravated felony" for purposes of § 2L1.2 was evident from the nature of the offense and the duration of his

imprisonment. Accordingly, the district court did not plainly err in imposing an eight-level enhancement under § 2L1.2(b)(1)(c).

### III. CONCLUSION

While the application of the Guidelines by the sentencing court was done in a mandatory fashion constituting statutory <u>Booker</u> error, Herrera has failed to demonstrate a reasonable probability that his sentence would have been different but for such error. Moreover, a review of the record demonstrates that the sentencing court did not err in imposing an eight-level enhancement under § 2L1.2(b)(1)(c). Accordingly, we **AFFIRM**.