[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 22, 2006
THOMAS K. KAHN
CLERK

No. 06-11873
Non-Argument Calendar

_____

D. C. Docket No. 05-00411-CR-T-27-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

IVAN ARLES ARDILA-RENGIFO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 22, 2006)**

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Ivan Arles Ardila-Rengifo pled guilty to possession with the intent to distribute 5 kilograms or more of cocaine, in violation of 46 App. U.S.C. § 1903(a) and (g), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii), and conspiracy to possess with the intent to distribute 5 kilograms or more of cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 App. U.S.C. § 1903(a), (g), and (j), and 21 U.S.C. § 960(b)(1)(B)(ii). The district court sentenced Ardila-Rengifo to 144 months' imprisonment. Ardila-Rengifo raises two issues on appeal: (1) the district court erroneously found that he was the captain of the vessel and thus improperly enhanced his sentence on that ground; and (2) his sentence was unreasonable. For the reasons set forth more fully below, we affirm.

## I. Background

The United States Coast Guard ("USCG") located a "go-fast" vessel in the Eastern Pacific Ocean and compelled the vessel to stop, using warning shots. The USCG then boarded the vessel, which they deemed to be without nationality, and found 99 bales of cocaine, weighing 1,588 kilograms. Four crew members of Colombian nationality, including Ardila-Rengifo, manned the vessel, but none of the crew admitted to being the captain. After their arrests, several of the crew members stated that Ardila-Rengifo was the captain, but that they each took turns navigating the vessel. At his plea hearing, Ardila-Rengifo admitted that he knew

2

that the boat he boarded was carrying drugs and that the purpose of the boat trip was to deliver cocaine. He further stated that he was to be paid a total of 130 million pesos for his participation in the trip and that he had received 55 million pesos before the trip began.

A probation officer prepared a presentence investigation report ("PSI") and, based upon Ardila-Rengifo's offense conduct, assigned a base offense level of 38, pursuant to U.S.S.G. § 2D1.1(c)(1), because Ardila-Rengifo's offenses involved more than 150 kilograms of cocaine. Additionally, the probation officer found that Ardila-Rengifo was the captain of the go-fast vessel and thus increased his base offense level by two, pursuant to U.S.S.G. § 2D1.1(b)(2)(B). After applying reductions to Ardila-Rengifo's offense level based upon Ardila-Rengifo's acceptance of responsibility and his eligibility for safety-valve relief under U.S.S.G. §§ 2D1.1(b)(7) and 5C1.2, the probation officer recommended a total adjusted offense level of 35. With an offense level of 35, and a criminal history category of I, Ardila-Rengifo's guideline range was 168 to 210 months' imprisonment. His statutory maximum sentence was life imprisonment.

At sentencing, Ardila-Rengifo admitted all the facts as presented in the PSI, but argued that those facts did not establish that he was the captain of the vessel. The government responded that Ardila-Rengifo was the captain of the vessel

3

because (1) the other crew members made post-arrest statements that Ardila-Rengifo was the captain, (2) he received 130 million pesos for his participation in the trip and the other crew members received only 40 million pesos, and (3) he admitted in his post-arrest statement that he was given navigational charts, coordinates, GPS receivers, two radios, paper instructions, and codes before beginning the trip. The court gave Ardila-Rengifo's counsel an opportunity to respond to the government's arguments, but counsel declined and relied only on his initial statements.

Based upon Ardila-Rengifo's possession of navigational equipment and the premium pay that he received for the trip, the court overruled Ardila-Rengifo's objection to the two-level captain enhancement. In imposing Ardila-Rengifo's sentence, the court noted that it had considered the factors set forth in 18 U.S.C. § 3553(a). The court further indicated that,

> A 14-year sentence for a 22-year-old man is more than is necessary to effect the statutory purposes of sentencing. This defendant has pled guilty, accepted responsibility. He comes from a country with an economic environment which is nothing short of hopeless. The greed part entitles him to a long sentence. There's no question about that. He comes from a culture that few of us in this country can even begin to appreciate and understand. He was the captain. He is entitled and deserves a longer sentence than the other crew members. . . . Having considered all of these matters, it is the finding of the court that a sentence within the guideline range is more than necessary to achieve the statutory purposes of sentencing . . . .

Thus, the court sentenced Ardila-Rengifo to 144 months' imprisonment, 24 months below the low-end of his guideline range and below his statutory maximum of life imprisonment.

## II. Discussion

### A. U.S.S.G. § 2D1.1(b)(2)(B)

Ardila-Rengifo argues on appeal that the district court erred in applying the two-level captain enhancement and in relying on the government's arguments at sentencing that were not supported by the record. Specifically, he contends that there was no evidence to support the government's arguments that he was provided with navigational equipment or that he earned more money for his participation in the drug trip than did the other crew members. He further notes that there was no evidence establishing that he: (1) had a license to be a captain; (2) piloted the boat; (3) was listed as the captain; (4) identified himself as the captain; or (5) had the authority to instruct other crew members.

We review a district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo. United States v. Cartwright, 413 F.3d 1295, 1298 (11th Cir. 2005), cert. denied, 126 S.Ct. 1116 (2006). However, where a defendant raises a sentencing argument for the first time on appeal, we review for plain error. United States v. Shelton, 400 F.3d 1325, 1328 (11th Cir. 2005). Under

5

plain error review, there must be (1) an error, (2) that is plain, and (3) that affects substantial rights. Id. at 1328-29. If these three prongs are met, we may exercise our discretion to notice the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. at 1329.

The Guidelines provide for a two-level enhancement in a defendant's offense level "[i]f the defendant unlawfully imported or exported a controlled substance under circumstances in which . . . the defendant acted as a pilot, copilot, captain, navigator . . . aboard any craft or vessel carrying a controlled substance . . . ." U.S.S.G. § 2D1.1(b)(2)(B). We have not adopted a rigid definition of the term "captain," but rather, we look to the facts of each case to determine whether the enhancement was properly applied. See Cartwright, 413 F.3d at 1298. In Cartwright, we upheld a captain enhancement where the defendant: (1) admitted he was a lifelong fisherman; (2) drove the boat at times; (3) followed directions on where to steer the boat; and (4) used a compass to navigate. Id. at 1299. We determined that the fact that other crew members also steered the boat did not negate Cartwright's enhancement because § 2D1.1(b)(2)(B) specifically included "copilots." Id. Moreover, it was not dispositive that Cartwright was not officially named the captain. Id.

The crux of the issue on appeal here is whether the district court erred in

6

relying on the facts that were presented only in the government's proffer, and, if so, whether the remaining facts to which Ardila-Rengifo admitted were alone sufficient to support the enhancement. As to whether the court erred in relying on the government's proffer, Ardila-Rengifo raises that issue for the first time on appeal, and, thus, we review it for plain error. Shelton, 400 F.3d at 1328. The court's reliance on the government's assertions in this case is analogous to the situation where a court permissibly relies on undisputed facts in the PSI. See Fed.R.Crim.P. 32(i)(3)(A) (a sentencing court "may accept any undisputed portion of the presentence report as a finding of fact"); see also United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing"). The district court is obligated to resolve disputed issues, but here, Ardila-Rengifo did not dispute the government's factual assertions. See Fed.R.Crim.P. 32(i)(3)(B). In other words, Ardila-Rengifo did not express in any way that the government's factual assertions as presented through its proffer were inaccurate or unreliable. Therefore, by analogy to a court's ability to permissibly rely on undisputed facts in a PSI, the court here did not plainly err in relying on the government's undisputed factual assertions. Furthermore, it is noteworthy that

7

Ardila-Rengifo does not dispute the accuracy of the assertions on appeal, but argues only that the government did not provide evidence in support of those assertions.

Accordingly, the district court properly considered Ardila-Rengifo's admissions and the government's undisputed assertions in applying the captain enhancement. Given that Ardila-Rengifo was paid significantly more than other crew members, was provided with navigational equipment before the trip, was considered the captain by the other crew members, and at times drove the boat, those circumstances are sufficient to warrant the captain enhancement pursuant to our precedent. See Cartwright, 413 F.3d at 1298-99. The fact that other crew members also navigated the boat is not dispositive because § 2D1.1(b)(2)(B) includes "copilots." See id. at 1299. Thus, the district court did not clearly err in enhancing Ardila-Rengifo's offense level by two for his role as a captain.

## B. Reasonableness

Ardila-Rengifo argues on appeal that his 144-month sentence was unreasonable despite the court's consideration of his young age, background, and history. He further asserts that his sentence was unreasonable because the court did not consider: (1) his lack of a criminal history, an education, and money; (2) his need to raise money for his child and father; and (3) the fact that he participated

in the drug trip as a way to provide for his family. He maintains that his sentence was in excess of the minimum necessary to meet the purposes of punishment required by 18 U.S.C. § 3553(a).

We review final sentences for reasonableness. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2006). "Review for reasonableness is deferential." Id. at 788. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of both [the] record and the factors in section 3553(a)." Id.

Following United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we held that, in imposing a sentence, the district court must first accurately calculate the defendant's guideline range and second consider the § 3553(a) factors to determine a reasonable sentence. Id. at 786. Those factors include, inter alia, (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public from future crimes of the defendant, and (4) the need to avoid unwarranted sentencing disparities among defendants with similar histories who have committed similar conduct. 18 U.S.C. § 3553(a). However, "nothing in Booker or elsewhere requires the district court to state on the record that it has

9

explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). In reviewing a sentence that was within the guideline range for reasonableness, we stated that we would ". . . consider the final sentence, in its entirety, in light of the § 3553(a) factors." United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006) (citing United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) for the proposition that "[w]e do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for reasonableness.").

As evidenced by the court's statements made at sentencing, the court considered many factors in determining an appropriate sentence for Ardila-Rengifo, including his personal history, his background, and the circumstances that led him to commit the offense. Based on those considerations, the court imposed a 144-month sentence, which was 24 months below the low-end of his guideline range and significantly lower than his statutory maximum of life imprisonment. Given the court's detailed consideration of many factors and its sentence below the applicable guideline range, Ardila-Rengifo's argument on appeal, that the court did not consider his personal and familial history, is simply without merit. Thus, Ardila-Rengifo has not established on appeal that his

10

sentence was unreasonable.

## III. Conclusion

In light of the foregoing, we conclude that the district court did not clearly err in enhancing Ardila-Rengifo's offense level pursuant to U.S.S.G. § 2D1.1(b)(2)(B) and that his 144-month sentence was reasonable. Accordingly, Ardila-Rengifo's sentence is

**AFFIRMED.**