[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10248
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00480-SCB-JSS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OLEKSII TSURKAN,
IGOR POLSHYN,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 12, 2018)

Before WILSON, JORDAN, and EDMONDSON, Circuit Judges.

PER CURIAM:

Defendants Igor Polshyn and Oleksii Tsurkan appeal their convictions and 300-month sentences for conspiracy to possess with intent to distribute -- and for possession of -- cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), (b), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii).  No reversible error has been shown; we affirm.

Briefly stated, Defendants were arrested after United States Coast Guard ("USCG") officers found them in possession of 370 kilograms of cocaine while on a sailboat in international waters south of the Dominican Republic.  At trial, Defendants asserted that, while sailing at night on the open sea, their rented sailboat became ensnared in rogue ropes.  In attempting to disentangle the sailboat, Defendants discovered that the ropes were attached to several wrapped packages, which Defendants decided to bring onboard.  Suspecting that the packages contained illegal drugs, Defendants say they intended to deliver the packages to authorities when they returned to the Dominican Republic.

I.

On appeal, Defendants challenge the constitutionality of their convictions under the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501, et seq. ("MDLEA").  In particular, Defendants assert these arguments: (1) the question of whether the sailboat was "subject to the jurisdiction of the United States" constitutes an element of the offense that must be proved to a jury beyond a reasonable doubt; (2) Congress has no constitutional authority to punish offenses on the high seas without a nexus to the United States; and (3) the government's exercise of jurisdiction over Defendants without first establishing such a nexus violated Defendants' due process rights.

Defendants acknowledge that their arguments about the MDLEA have been foreclosed by our binding precedent in United States v. Campbell, 743 F.3d 802 (11th Cir. 2014), and in United States v. Cruickshank, 837 F.3d 1182 (11th Cir. 2016).  "Under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court."  United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008) (quotations omitted).

3

II.

We next address Defendants' challenges to the district court's evidentiary rulings. Polshyn argues that the district court deprived him of his Fifth and Sixth Amendment rights to present a defense by excluding his testimony about his brother's death due to a drug overdose. "Whether the exclusion of evidence violated a constitutional guarantee is a legal question reviewed de novo." United States v. Sarras, 575 F.3d 1191, 1209 n.24 (11th Cir. 2009).

The Sixth Amendment guarantees a defendant the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. "Implicit in this right -- as well as in the basic notion of 'due process of law' in general -- is the idea that criminal defendants must be afforded the opportunity to present evidence in their favor." United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004) (citation omitted).

During trial, Polshyn testified that he and Tsurkan suspected the packages contained illegal drugs and that they "were too worried to throw it away because we didn't think it was a good idea for it to end up in somebody else's hands." Polshyn then added, "We do have a special relationship with drugs, meaning my younger brother actually died of drugs." The government objected; and the district court instructed the jury to disregard the statement about Polshyn's brother.

4

Tsurkan's lawyer later sought to question Polshyn about his brother's death, asserting that the testimony would establish that Defendants had no intent to sell the drugs. The district court denied the request on grounds that the testimony was not relevant and was more prejudicial than probative.

We suspect that the district court erred in excluding Polshyn's proposed testimony. We question the district court's determination that the testimony was excludable as irrelevant or as unduly prejudicial. As a practical matter, intent was the only issue in this case. Because the proposed testimony had some tendency to make more probable Polshyn's assertion that he had no intent to sell the drugs, the testimony was "relevant" within the meaning of Fed. R. Evid. 401. Moreover, although the testimony might have elicited with the jury some sympathy for Polshyn, we doubt that the testimony's probative value for the main issue was "substantially outweighed" by the risk of unfair prejudice. See Fed. R. Evid. 403.

Generally speaking, a defendant has a constitutional right "to present evidence that has a direct bearing on a formal element of the charged offense." Hurn, 368 F.3d at 1363. A defendant also "has the right to introduce evidence that is not directly relevant to an element of the offense, but that makes the existence or non-existence of some collateral matter somewhat more or less likely, where that collateral matter bears a sufficiently close relationship to an element of the offense." Id. at 1364.

5

Evidence of Polshyn's brother's death seems to fall within this second category: it constitutes evidence of a collateral matter that bears at least some relationship to the intent element of the charged offense.  Evidence that a person has lost a close family member to a drug overdose could -- "through a reasonable chain of inferences" -- make it less likely that that person possessed the requisite intent to engage in a drug trafficking offense.  See id. at 1363.  We avoid deciding constitutional questions when we can; so we will just assume for purposes of this appeal that the district court made a constitutional error in excluding Polshyn's proposed testimony.  See Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105 (1944) (stressing that courts "ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable").

Our focus today is on whether the supposed constitutional error was "harmless beyond a reasonable doubt."  See Hurn, 368 F.3d at 1362-63.  In deciding whether constitutional error is harmless, we ask "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  Chapman v. California, 386 U.S. 18, 23-24 (1967).  Our determination about whether reversal is warranted "must be based on our own reading of the record and on what seems to us to have been the probable impact of [the constitutional error] on the minds of an average jury."  Harrington v. California, 395 U.S. 250, 254 (1969).  In some cases, a constitutional error may be

6

deemed harmless beyond a reasonable doubt when the evidence of the defendant's guilt is "so overwhelming." Id.

Based on our review of the record in this case, we conclude that the district court's assumed error in excluding the proposed testimony was harmless beyond a reasonable doubt. Defendants were found traveling on a sailboat displaying a fraudulent registration number and in an area known for drug trafficking. Defendants were in possession of 370 kilograms of cocaine, which was stashed throughout the vessel's stowage compartments. The only element in dispute at trial was whether Defendants possessed the requisite intent to distribute the drugs found onboard. Intent can be inferred based on the large quantity of cocaine found within Defendants' possession. See United States v. Tinoco, 304 F.3d 1088, 1123 (11th Cir. 2002).

About intent, Polshyn testified at length about his version of the events, including that he had no intention of selling the accidentally-discovered drugs and, instead, intended to turn the drugs over to authorities. Although testimony about Polshyn's brother's death might have lent some support to Polshyn's assertion that he lacked the requisite intent, powerful objective evidence in the record contradicted expressly Polshyn's version of the events leading up to his being in possession of the cocaine. In particular, data from the sailboat's global positioning system ("GPS") clashed with Polshyn's inconsistent testimony about Defendants'

direction of travel and his testimony that the sailboat remained stationary for at least an hour while Defendants purportedly untangled the sailboat from the ropes and hauled the packages on board.  Expert testimony and photographic evidence also demonstrated that the sailboat's hull and rudder showed no signs of damage: this evidence conflicted with Defendants' testimony about the sailboat having been entangled in ropes.  Defendants also took no steps to report the suspected contraband to the USCG officers -- even when the USCG officers boarded the sailboat -- despite Defendants' asserted intention to turn the drugs over to authorities.

In the light of the overwhelming evidence of Defendants' guilt -- including strong evidence contradicting directly Polshyn's version of the events -- we are convinced that the exclusion of the proposed testimony about Polshyn's brother contributed in no way to Defendants' convictions.  Having concluded that the district court's assumed constitutional error was harmless beyond a reasonable doubt, no reversal is warranted.

III.

We next address Tsurkan's argument that the district court abused its discretion by excluding expert testimony from Captain John Timmel.  In pertinent

8

part, Captain Timmel's proffered testimony would have run this way:  it is not uncommon for sailboats to become entangled in rogue ropes or netting while at sea.  Following a hearing, the district court determined that Captain Timmel's testimony was inadmissible under Federal Rule of Evidence 702.

We review the district court's ruling about the admissibility of expert testimony under an abuse-of-discretion standard.  United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004).  Under this standard, we will not reverse the district court's decision "unless the ruling is manifestly erroneous."  Id.

In determining whether an expert's testimony is admissible under Rule 702, we consider three factors: (1) whether the expert is qualified to testify competently; (2) whether the expert has used sufficiently reliable methodology in reaching his conclusions; and (3) whether the testimony will assist the trier of fact.  Id. at 1260.  When a witness relies primarily on his experience to qualify him as an expert, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  Id. at 1261.

The district court abused no discretion by excluding Captain Timmel's proffered testimony.  Captain Timmel's curriculum vitae showed that Captain Timmel is an experienced harbor pilot who has worked chiefly in the Tampa Bay area and with motorboats.  Nothing demonstrated that Captain Timmel had

9

specialized knowledge or experience sufficient to qualify him as an expert either in the frequency with which sailboats become ensnared in rogue ropes or nets at sea or in the sailing conditions south of the Dominican Republic. The testimony was, thus, excluded properly under Rule 702.

We are also unpersuaded that the exclusion of the proffered testimony deprived Tsurkan of his Fifth and Sixth Amendment rights. Captain Timmel's proffered testimony had no "direct bearing on a formal element of the charged offense." See Hurn, 368 F.3d at 1363. Nor would the proffered testimony have had "a substantial impact on the credibility of an important government witness." See id. Testimony about the general likelihood of a sailboat becoming entangled in ropes at sea would not rebut or cast doubt on the USCG investigator's testimony about the condition of the sailboat in this case. Tsurkan has thus demonstrated no constitutional violation.

IV.

Polshyn next challenges the district court's application of a two-level obstruction-of-justice enhancement -- pursuant to U.S.S.G. § 3C1.1 -- for testifying falsely at trial. We review for clear error the district court's factual findings and review de novo the court's application of the guidelines to those facts. United

States v. Doe, 661 F.3d 550, 565 (11th Cir. 2011).  "Under the clearly erroneous standard, we must affirm the district court unless review of the entire record leaves us with the definite and firm conviction that a mistake has been committed." United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003) (quotation omitted).

In pertinent part, section 3C1.1 provides for a two-level increase to the defendant's base offense level if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing" of his offense of conviction, and "(2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct."  U.S.S.G. § 3C1.1.  The Application Notes to section 3C1.1 list examples of conduct warranting the enhancement, including "committing, suborning, or attempting to suborn perjury."  Id. § 3C1.1, comment. (n.4(B)).

A defendant's testimony constitutes perjury when the testimony: (1) is made under oath; (2) is false; (3) is material; and (4) is given "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94 (1993).  For purposes of section 3C1.1, "material . . . means evidence, fact, statement, or information that, if

11

believed, would tend to influence or affect the issue under determination."
U.S.S.G. § 3C1.1, comment. (n.6).

The record supports the district court's factual determination that Polshyn committed perjury during trial. Polshyn's testimony that he intended to turn the cocaine over to authorities was inconsistent with evidence that neither he nor Tsurkan took steps to notify the USCG agents that Defendants suspected contraband was aboard the sailboat. Moreover, the sailboat's GPS data contradicted Polshyn's testimony (1) that Defendants had been traveling toward Grenada and (2) that the sailboat had been stationary for at least an hour while Defendants worked to free the sailboat from the ropes and to load the cocaine-filled packages onboard. A USCG investigator who examined the sailboat also testified that he observed no disturbance in the marine growth or other damage to the hull or rudder that would be consistent with Polshyn's version of the events.

Viewing the record as a whole, we are not left "with the definite and firm conviction" that the district court committed a mistake in determining that Polshyn testified falsely. The district court committed no clear error in determining that Polshyn perjured himself and, thus, applied properly a two-level enhancement under section 3C1.1.

12

V.

Tsurkan challenges the district court's application of a two-level role enhancement, pursuant to U.S.S.G. § 2D1.1(b)(3), for acting as a pilot or copilot of a vessel carrying a controlled substance.

The Sentencing Guidelines provide for a two-level increase to a defendant's base offense level if he "acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled substance." U.S.S.G. § 2D1.1(b)(3)(C). We have said that a defendant need not have formal training or licensure to qualify as a "pilot" or "copilot" for purposes of a section 2D1.1(b)(3) enhancement. United States v. Cartwright, 413 F.3d 1295, 1298-99 (11th Cir. 2005). Nor must the defendant have been in "position of authority" for the enhancement to apply. Id. (concluding that the district court committed no clear error in applying the enhancement to a defendant who took turns driving the boat, and who followed instructions on where to steer the boat).

Polshyn and Tsurkan each testified that, at night, they took two-hour shifts at the helm while the other would sleep. Based on this evidence, the district court committed no clear error in determining that Tsurkan acted as a pilot or copilot for purposes of the section 2D1.1(b)(3) enhancement. That Tsurkan lacked

13

specialized training or knowledge about sailing and was following Polshyn's instructions does not preclude application of the enhancement.  See id.

AFFIRMED.