# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-4081

_____

| | | |
|---|---|---|
| C & S Acquisitions Corp., Successor by assignment of CIS Corporation, | * * * * | |
| Appellant, | * * | Appeal from the United States District Court for the District |
| v. | * * | of Minnesota. |
| Northwest Aircraft, Inc., a Delaware corporation, | * * * * | |
| Appellee. | * | |

_____

Submitted: October 23, 1997
Filed: August 13, 1998

_____

Before McMILLIAN, FLOYD R. GIBSON, and BEAM, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

C & S Acquisitions Corp. ("C & S") appeals the district court's[1] grant of summary judgment to Northwest Aircraft, Inc. ("Northwest") in C & S's action for alleged breaches of four aircraft lease agreements. C & S also appeals the district

---

[1]The HONORABLE ANN D. MONTGOMERY, United States District Court Judge for the District of Minnesota.

court's[2] order which compelled the parties to arbitrate the three claims pertaining to the condition of the aircrafts' airframes and engines. For the reasons set forth below, we affirm.

## I.   BACKGROUND

Pursuant to four lease agreements dated July 12, 1988, Northwest leased four non-advanced Boeing 727-200 aircraft from C & S.[3]  Although each of the four leases concerned a separate aircraft, the lease provisions at issue are essentially identical. Each lease contained a section 9.23 in which the parties agreed to submit certain disputes to arbitration.  Section 9.23 provides that:

> Any dispute between  [C & S] and [Northwest] regarding the condition of the Airframe or any Engine arising under Section 8 or 9 hereof shall be referred to and determined by the manufacturer of (respectively) the Airframe or Engine.

Appellant's App. at 111.  Each lease also contained a section 14 entitled "Remedies." Section 14(e) stated that:

> To the extent permitted by Applicable Law, [Northwest] hereby <u>waives any rights now or hereafter conferred by statute or otherwise</u> which may require [C & S], otherwise than in accordance with the provisions of this Section 14, to sell, lease  or otherwise use the Airframe or any Engine in

[2]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

[3]Although CIS Corporation negotiated the lease agreements with Northwest, C & S later became the lessor as CIS Corporation's successor-in-interest after CIS Corporation went bankrupt during the lease terms and C & S purchased the aircraft out of the bankruptcy.

mitigation of [C & S's] damages <u>or which may otherwise limit or modify any of [C & S's] rights or remedies under this Section 14</u>.

<u>Id.</u> at 125 (emphasis added). Finally, the leases contained a section 17.1 entitled "Renewal Option" which provided that:

>　　　(a)　[Northwest] shall have the right, subject to the provisions set forth herein, to extend this Lease up to a maximum of three years in one or more successive periods of not less than one year and not more than three years (each such period being hereafter referred to as a "Renewal Term"), the first Renewal Term commencing at the end of the Basic Term and each of the following Renewal Terms (if any) commencing at the end of the immediately preceding Renewal Term. . . . The rental payable during any Renewal Term shall be the lesser of the Fair Market Rental Value for the Aircraft or $93,500 per month. . . .
>　　　(b)　<u>[Northwest] shall not renew any lease of a 727-200 aircraft so that the term of such lease would be extended into the period of time which would be covered by a Renewal Term hereunder without first providing written notice thereof to [C & S] and negotiating with [C & S] in good faith with respect to [Northwest] electing to extend this Lease pursuant to Section 17.1.</u>

<u>Id.</u> at 133-34 (emphasis added).

After the leases expired, Northwest returned the four aircraft to C & S. Upon inspecting the aircraft, C & S commenced this action against Northwest. The first three counts alleged deficiencies in the condition of the airframes and engines.[4] In Count IV,

---

[4]Specifically, in Count 1, citing section 9.18 of the leases, C & S alleged that Northwest failed to return certain manuals and technical records concerning the aircrafts' engines and airframes. In Count II, citing section 9.2, C & S alleged that the condition of one returned engine did not meet the required return standards. In Count III, citing sections 8.7, 8.11, and 9.4, C & S alleged that Northwest failed to make the necessary modifications and repairs to the aircraft and their engines.

C & S sought to enforce section 17.1(b). Section 17.1(b) allegedly prohibited Northwest from renewing "any leases of Boeing 727-200 aircraft which it had under lease from other [l]essors which would extend the terms of those leases into a period of time which would be covered by a Renewal Term under any of the [l]eases" with C & S without first providing C & S with written notice and negotiating in good faith with C & S for the renewal of C & S's four aircraft leases. Id. at 9-10. C & S contends that Northwest extended leases on other Boeing 727-200 aircraft during the renewal terms of its leases and deprived C & S of its opportunity to negotiate in good faith with Northwest to obtain the benefit of the lease renewals.

Invoking the arbitration provisions contained in the four leases, Northwest demanded that C & S arbitrate Counts I, II and III. After C & S refused to arbitrate, the district court, pursuant to the Federal Arbitration Act, 9 U.S.C. § § 1-16 (1994), granted Northwest's motion to compel binding arbitration of those counts, finding that Counts I-III fell within the scope of the arbitration agreement contained in section 9.23 of the leases. Because the arbitrators[5] named in the arbitration agreements declined to preside over the arbitration and the parties failed to agree on a replacement arbitrator, the district court appointed the Honorable Robert E. Bowen, a retired judge of the Hennepin County District Court, to serve as arbitrator. In issuing his decision on Counts I-III, Judge Bowen did not award C & S any recovery on these claims.

Thereafter, Northwest moved the district court for confirmation of the arbitrator's award on Counts I-III and for summary judgment on Count IV. On October 23, 1996, the district court granted both motions. Regarding Counts I-III, the district court stated that C & S, who filed no opposition to Northwest's motion to confirm the arbitrator's

---

[5]In the arbitration agreements, the parties selected Boeing Commercial Airplane Company to arbitrate disputes regarding the condition of the aircrafts' airframes and Pratt & Whitney Aircraft to arbitrate disputes over the condition of the aircrafts' engines.

award, failed to demonstrate any reason why the court should not enter the confirmation order. In addition, the district court found that Count IV concerned a lease provision which merely required Northwest to negotiate in good faith in the future and was unenforceable as a matter of Minnesota law.

On November 22, 1996, C & S filed its Notice of Appeal "from the summary judgment entered on October 24, 1996." Appellee's Add. at 7. With its Notice of Appeal, C & S also filed its Appeal Information Form which stated that the issue on appeal concerned: "[w]hether a contractual provision to negotiate in good faith upon notice of a subsequent action is enforceable under Minnesota law regardless of the actions of the parties after the agreement is signed." Appellee's Mot. to Dismiss at Ex. F. On December 2, 1996, after the thirty days allowed for filing a notice of appeal had elapsed, C & S filed a Statement of Issues on Appeal, pursuant to Fed. R. App. P. 10(b)(3), which listed both the summary judgment of Count IV and the decision to refer Counts I-III to an arbitrator as issues raised in its appeal. Subsequently, Northwest moved this Court to dismiss C & S's appeal, to the extent that C & S purported to include the district court's decision to compel arbitration of Counts I-III, based on lack of appellate jurisdiction. We decided to consider Northwest's motion to dismiss as we consider the case on the merits.

## II. DISCUSSION

### A. *The Decision to Compel Arbitration of Counts I-III*

We first must address whether this court has appellate jurisdiction to consider the propriety of the district court's order compelling arbitration of Counts I-III. In its motion to dismiss, Northwest argues that neither this order nor this issue was timely appealed because C & S did not specify the district court's order confirming the arbitration award in its Notice of Appeal or in its Appeal Information Form. The time period for filing an appeal expired on November 25, 1996, and, by that date, C & S had

not filed any documents explicitly or implicitly broadening the subject matter of its appeal. C & S counters that it timely appealed from the district court's October 24, 1996 Order which represents a single order comprising both the summary judgment and the confirmation order. C & S submits that it did not intend for its Appeal Information Form to function as its Fed. R. App. P. 10(b)(3) Statement of Issues on Appeal and that, by filing its Statement of Issues on Appeal on December 2, 1996, it met its requirement to articulate the issues appealed.

Federal Rule of Appellate Procedure 3(c) requires appellants to provide a notice of appeal which "must designate the judgment, order, or part thereof appealed from." Rule 3(c) constitutes "more than a mere technicality," and the failure to comply with Rule 3(c) "may create a jurisdictional bar to an appeal." Elca Enter. v. Sisco Equip. Rental & Sales, 53 F.3d 186, 189 (8th Cir. 1995). Although we generally construe notices of appeal liberally, "an intent to appeal the judgment in question must be apparent and there must be no prejudice to the adverse party." Berdella v. Delo, 972 F.2d 204, 207 (8th Cir. 1992).

We conclude that C & S's intent to appeal the district court's order compelling arbitration was not apparent from its Notice of Appeal, Appeal Information Form, nor the procedural history of the case. C & S's Notice of Appeal specifically provides that C & S appeals "from the summary judgment entered on October 24, 1996." Appellee's Mot. to Dismiss at Ex. E (emphasis added). The summary judgment granted to Northwest concerned only Count IV. The Notice of Appeal failed to mention the district court's prior decision to refer Counts I, II, and III to binding arbitration. Similarly, C & S's Appeal Information Form listed only one issue for appeal: "[w]hether a contractual provision to negotiate in good faith . . . is enforceable under Minnesota law." Id. at Ex. F. Although the appeal of a final order permits review of issues determined in prior orders when proper notice is provided, this principle does not apply in this case because C & S's appeal of the October 24, 1996 Order failed to give

sufficient notice of its intent to appeal the separate, distinct issue regarding the district court's confirmation of the earlier arbitration award. See Berdella, 972 F.2d at 208 n.6.

The procedural history of the case also shows that C & S's intent to appeal the district court's confirmation order was not apparent. The district court compelled arbitration of Counts I-III over a year before granting summary judgment on Count IV. After the arbitrator decided against C & S on Counts I-III, C & S did not challenge this decision. Later, when Northwest moved the district court to confirm the arbitrator's award, C & S did not oppose the motion. Instead, C & S first provided notice of its intent to appeal the confirmation order on December 2, 1996 in its Statement of Issues on Appeal, after the time to file the appeal had expired.

We conclude that C & S's omission of any timely reference to the district court's confirmation order in its Notice of Appeal or Appeal Information Form constitutes more than a mere technical deficiency. Because C & S has failed to comply with Rule 3(c), we lack jurisdiction to consider its arguments regarding the district court's decision to compel arbitration of Counts I-III. See id. at 208. Therefore, we dismiss C & S's appeal of the district court's decision to compel arbitration of Counts I-III for lack of appellate jurisdiction.

## B.    *The Grant of Summary Judgment on Count IV*

In Count IV, C & S seeks to enforce lease section 17.1(b), which provides that Northwest would "not renew any lease of a 727-200 aircraft . . . without first providing written notice . . . and negotiating with [C & S] in good faith." Appellant's App. at 134. C & S challenges the district court's grant of summary judgment to Northwest on Count IV. The district court determined that section 17.1(b) constitutes an agreement to

negotiate and is unenforceable as a matter of Minnesota law.[6]  See id. at 203.  Summary judgment is appropriate when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We review the district court's grant of summary judgment de novo, construing the record in the light most favorable to C & S.  See Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996).

For reversal, C & S argues that certain factual events should remove this case from the general principle that an agreement to negotiate in the future is unenforceable. Namely, C & S places significance on the fact that Northwest drafted the lease provision which Northwest now disclaims as unenforceable.  C & S also notes that Northwest, through its President, acknowledged the existence of its obligation to negotiate with C & S regarding future lease renewals.  Finally, C & S maintains that sufficient evidence exists for a jury to determine an appropriate damage award.  We find C & S's arguments unpersuasive.

Under Minnesota law, agreements to negotiate in good faith in the future are unenforceable as a matter of law.  See Mohrenweiser v. Blomer, 573 N.W.2d 704, 706 (Minn. Ct. App. 1998) ("In Minnesota, . . . an agreement to negotiate in good faith in the future is not enforceable because it does not constitute the parties' complete and final agreement.")  See also Consolidated Grain & Barge Co. v. Madgett, 928 F.2d 816, 817-18 (8th Cir. 1991) (Under Minnesota law, "an agreement to negotiate is unenforceable" because such agreements generally do not provide a basis for determining whether a breach has occurred or for providing an appropriate remedy for a breach.)

---

[6]Both parties agree that Minnesota law governs the leases, as stipulated in section 22.5 of each lease: "[t]his lease . . . shall in all respects be governed by, and construed in accordance with, the laws of the State of Minnesota."  Appellant's App. at 141.

Here, section 17.1(b) represents an agreement to negotiate in good faith in the future for lease renewals. See id. C & S's arguments miss the mark by assuming an obligation to extend the leases and focusing on the appropriate amount of damages when, in fact, no agreement to extend the leases existed. Rather, whether the parties would ultimately agree to a renewal of any of the leases and on what terms constitutes mere speculation. Accordingly, we affirm the district court's grant of summary judgment to Northwest on Count IV because section 17.1(b) constitutes an agreement to negotiate in the future and is, thus, unenforceable as a matter of Minnesota law. See id. Although this case involves two sophisticated parties, we nonetheless register our disapproval of Northwest's insertion of such an unenforceable provision into the lease.

## III.   CONCLUSION

For the foregoing reasons, we dismiss C & S's appeal of the district court's decision to compel arbitration of Counts I-III for lack of appellate jurisdiction and affirm the district court's grant of summary judgment to Northwest on Count IV.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.