# United States Court of Appeals
## For the First Circuit

No. 05-2303

CONSTRUCTORA ANDRADE GUTIÉRREZ, S.A.,

Plaintiff, Appellee,

v.

AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO,

Defendant/Third-Party Plaintiff, Appellee,

C&M CONSTRUCTORA, S.A.,

Third-Party Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge]

Before
Torruella and Lynch, Circuit Judges,
and Hansen,[*] Senior Circuit Judge.

Thomas E. Abernathy, IV, with whom Iván R. Fernández-Vallejo was on the brief for appellant.
Jennifer L. Swize, with whom Jaime Bruqueras and Donald B. Ayer were on the brief for appellee Constructora Andrade Gutiérrez, S.A.
Francisco A. Rosa-Silva for appellee American International Insurance Company of Puerto Rico.

October 27, 2006

---

[*]Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

**HANSEN, <u>Senior Circuit Judge</u>**.  C&M Constructora, S.A. (C&M) appeals from the July 13, 2005, amended judgment *nunc pro tunc* of the district court in which the district court granted summary judgment in favor of Constructora Andrade Gutierrez, S.A. (CAG) on its claim against American International Insurance Company of Puerto Rico (AIICO); granted summary judgment in favor of AIICO on its third-party claim for indemnification against C&M; and dismissed C&M's cross-claims against CAG on the basis that the cross-claims were subject to mandatory arbitration.  We affirm those portions of the district court's judgment that are properly the subject of this appeal.

## I. Background

C&M, a construction company headquartered in the Dominican Republic, entered into an agreement titled "Agreement on Grouping Enterprises" (hereinafter "Joint Venture Agreement") in November 1995 with CAG, a Brazilian corporation, for the sole purpose of bidding on the reconstruction of the Pont Sondé-Mirebalais Highway in the Republic of Haiti.  In the event that the joint venture won the contract, CAG agreed to provide 100% of the guarantees for performance and payment to the Republic of Haiti, and C&M agreed to provide counter-guarantees to CAG for C&M's participation in the project.

The Republic of Haiti awarded the project to the joint venture in May 1996.  Pursuant to the Joint Venture Agreement, CAG obtained

a performance and payment bond on behalf of the joint venture for the benefit of the Republic of Haiti, and C&M obtained a bond from AIICO for the benefit of CAG in proportion to C&M's participation in the construction project. The AIICO bond stated that it was "an irrevocable and unconditional guarantee . . . for the completion by the contractor of its obligations to [CAG] pursuant to the stipulations of the contract dated May 6, 1996." (Appellant's App. at 165.)

The parties were unable to settle disputes that developed during the construction project, and on February 11, 1998, C&M and CAG entered into an agreement titled "Modifications to Agreement of Enterprise Group" (Modifications Agreement) in which participation in the construction project was reallocated 99% to C&M and 1% to CAG. The Modifications Agreement incorporated a letter of the same date (Letter Agreement) written by C&M and approved by CAG, wherein the parties agreed that C&M would pay $967,000 to CAG as reimbursement for expenses incurred by CAG, to the extent that amount was supported by a to-be-performed audit, and C&M would pay $440,000 to CAG for loss of business and profits. The Letter Agreement contemplated that C&M would provide CAG with a bank bond or insurance guarantee for the amounts specified in the Letter Agreement. Although C&M provided two surety bonds, CAG returned the bonds, and no additional bonds were ever issued on the Letter Agreement.

The subsequent audit performed pursuant to the Letter Agreement revealed that CAG was responsible for cost overruns while it controlled the project, and that C&M's resulting losses far exceeded the amounts C&M had agreed to pay in the Letter Agreement. C&M thereafter refused to pay the agreed-upon amounts pursuant to the terms of the Letter Agreement. On July 19, 1999, CAG filed a complaint against AIICO in the United States District Court for the District of Puerto Rico, invoking the district court's diversity jurisdiction and seeking to recover on the AIICO bond for the amounts specified in the Letter Agreement that C&M refused to pay.

C&M attempted to intervene in CAG's complaint against AIICO to protect its interests. Meanwhile, AIICO filed a third-party complaint against C&M in the original action, seeking to invoke the separate indemnity agreement it had entered into with C&M to cover any payments that AIICO might be required to make on the bond it had issued on C&M's behalf in favor of CAG. Thereafter, C&M filed cross-claims against CAG, claiming that CAG had breached the Joint Venture Agreement.

After much litigation, the district court filed an Opinion and Order on February 26, 2003, granting summary judgment in favor of CAG on its original claim against AIICO in the amount of $1,407,000, finding that the bond issued by AIICO was in actuality an unconditional guarantee essentially payable on demand. In an Opinion and Order filed on February 27, 2003, the district court

-4-

granted CAG's motion to dismiss C&M's cross-claims without prejudice, finding that the claims were subject to mandatory arbitration. The district court then entered judgment on CAG's claim against AIICO and on C&M's cross-claims against CAG on February 27, 2003, in accordance with the aforementioned Opinions and Orders.

On November 1, 2004, the district court filed a Memorandum and Order finding that C&M was liable to AIICO on the third-party complaint against C&M for indemnification of the amounts that AIICO was ordered to pay to CAG pursuant to the February 26, 2003, Opinion and Order. The district court then filed an amended judgment on November 1, 2004, amending the February 27, 2003, judgment to add the judgment against C&M in favor of AIICO. Finally, on July 13, 2005, the district court granted CAG's motion to include prejudgment interest on the amount of $1,407,000 that AIICO was ordered to pay to CAG in the February 26, 2003, order. The district court entered an Amended Judgment *Nunc Pro Tunc* reflecting the three prior judgments and the newly awarded pre-judgment interest.

From this final judgment, both C&M and AIICO filed separate notices of appeal. AIICO's appeal was docketed as No. 05-2302, and its caption does not list C&M as a party to that appeal. C&M's appeal was docketed as No. 05-2303. The appeals were consolidated for oral argument. AIICO eventually settled its dispute with CAG

-5-

by paying $1,600,000 to CAG and moved to dismiss its appeal in this court on November 2, 2005. Accordingly, this court dismissed appeal No. 05-2302. C&M's appeal No. 05-2303 is therefore the subject of the case before us.

## II. Issues on Appeal and Standard of Review

C&M filed its notice of appeal on August 3, 2005, in which it appealed

> from a final amended judgment *nunc pro tunc* (and memorandum and order) entered on July 13, 2005 by the Hon. Jay A. Garcöa [sic], amendingan [sic] amended judgment (and memorandum and order) entered on November 1, 2004 granting defendant and third-party plaintiff [AIICO]'s motion for summary judgment and ruling that C&M was obligated to indemnify AIICO for any disbursements made to plaintiff, [CAG], as well as any costs and attorneys fees resulting from the court's February 25, 2003 judgment and February 27, 2003 Opinion and Order entered in CAG's favor.

(Appellant's App. at 1067.) One week later, C&M filed an amended notice of appeal, which was nearly identical in language to the original notice of appeal, but added the phrase "dismissing C&M's cross claims against plaintiff [CAG], without prejudice, finding that they were subject to mandatory arbitration" to its description of which portions of the July 13, 2005, amended judgment *nunc pro tunc* it was appealing.[2] (Id. at 1071-72.) AIICO filed its notice of appeal on the same date, specifying the district court's judgment granting CAG $1,407,000 plus prejudgment interest.

---

[2]The amended notice of appeal also changed "February 27, 2003 Opinion and Order" in the last line to "February 26, 2003 Opinion and Order." This does not affect our analysis.

-6-

In their briefing to this court, both CAG and AIICO declined to address the validity of the district court's judgment ordering AIICO to pay CAG on the bond. CAG claims that the issue is moot in light of its settlement with AIICO. AIICO claims that the validity of the underlying judgment ordering AIICO to pay CAG on the bond is irrelevant because C&M entered into a separate unconditional indemnity agreement that was not contingent on the correctness of the district court's judgment against AIICO.

Putting the issues of the relevance and the mootness of the underlying judgment aside, we question first whether the separate order of February 26, 2003, finding that the bond was an unconditional guarantee and ordering AIICO to pay $1,407,000 to CAG, is even properly before this court as a part of C&M's appeal. As quoted above, C&M filed a very specific original notice of appeal and an even more specific amended notice of appeal. Compliance with Federal Rule of Appellate Procedure 3, specifying the contents of a notice of appeal, is jurisdictional and cannot be waived. See Torres v. Oakland Scavenger Co., 487 U.S. 312, 317 (1988). We must therefore determine which orders are encompassed within C&M's amended notice of appeal before we proceed to the merits of the appeal. See Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, 58 (1st Cir. 2005) (addressing appellate jurisdiction even though it was not raised by the parties).

A notice of appeal must "designate the judgment, order, or

part thereof being appealed," Fed. R. App. P. 3(c)(1)(B), before it confers jurisdiction on a court of appeals to hear a case, see Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 122 (1st Cir. 2003). "[T]he general rule is that '[i]f an appellant . . . chooses to designate specific determinations in his notice of appeal-rather than simply appealing from the entire judgment-only the specified issues may be raised on appeal.'" United States v. Universal Mgmt. Servs., Inc., 191 F.3d 750, 756 (6th Cir. 1999) (quoting McLaurin v. Fischer, 768 F.2d 98, 102 (6th Cir. 1985)), cert. denied, 530 U.S. 1274 (2000). The failure to include a particular issue in a notice of appeal can be fatal to this court's jurisdiction over that issue. See Poy v. Boutselis, 352 F.3d 479, 486 (1st Cir. 2003) (declining to address an issue on appeal concerning another party that was not raised in the notice of appeal); see also Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 395 (1st Cir. 1999) ("Failure to make a sufficient specification ordinarily debars the appellant from arguing the propriety of an unspecified ruling on appeal."); Spound v. Mohasco Indus., Inc., 534 F.2d 404, 410 (1st Cir. 1976) ("Nor was plaintiff correct in his further allegation that his specific and limited prior appeal raised matters contained in entirely different paragraphs."), cert. denied, 429 U.S. 886 (1976), abrogated on other grounds by Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993).

Notwithstanding the jurisdictional nature of the Rule 3

requirements, we construe those requirements liberally, analyzing "the notice of appeal in the context of the entire record." Blockel v. J.C. Penney Co., Inc., 337 F.3d 17, 23-24 (1st Cir. 2003). "This principle of liberal construction does not, however, excuse noncompliance with the Rule. Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." Smith v. Barry, 502 U.S. 244, 248 (1992).

This case involves multiple parties; three separate substantive claims: CAG's original claim against AIICO on the bond, AIICO's third-party claim against C&M for indemnity, and C&M's cross-claims against CAG for breach of the Joint Venture Agreement; and three separate district court orders addressing each claim. Following the district court's amended judgment *nunc pro tunc*, C&M specifically appealed from the district court's order requiring C&M to indemnify AIICO. C&M then filed an amended notice of appeal, adding to its appeal the district court's order dismissing C&M's cross-claims because they were subject to arbitration. AIICO separately appealed the district court's order holding it liable on the bond but dismissed that appeal upon settlement with CAG. While C&M's amended notice of appeal mentioned the February 26, 2003, order that determined that AIICO was liable on the bond, the notice of appeal was specifically limited to "any costs and attorneys fees resulting from" that order. (Appellant's App. at 1071-72.)

Given the circumstances of this case and the specific nature

-9-

of C&M's notice of appeal and amended notice of appeal, we conclude that C&M did not appeal the district court's February 26 order requiring AIICO to pay on the bond. C&M knew the limited scope of its original notice of appeal as evidenced by its amended notice, in which it added another of the district court's specific rulings. Even after AIICO dismissed its appeal, C&M did not attempt to include the underlying judgment on the CAG claim against AIICO within its own appeal. C&M's actions bring to mind the ancient maxim, "*expressio unius est exclusio alterius*" (the expression of one thing is an intention to exclude all others). Kotler v. Am. Tobacco Co., 981 F.2d 7, 11 (1st Cir. 1992) (holding that a notice of appeal's exclusion of one order, coupled with the designation of a distinct and independent order, "loudly proclaims plaintiff's intention not to appeal from the former order"); see also C&S Acquisitions Corp. v. Nw. Aircraft, Inc., 153 F.3d 622, 625 (8th Cir. 1998) (declining to apply the rule that an appeal from a final order permits the review of issues decided in prior orders because the notice of appeal specified a grant of summary judgment, which applied only to one count, and did not encompass the district court's separate order confirming an arbitration award). C&M is the master of its notices, and we are limited to reviewing only those orders fairly raised within those notices. We conclude that we lack jurisdiction to disturb the district court's judgment ordering AIICO to pay CAG on the bond, and we limit our discussion

-10-

accordingly.

We review a district court's grant of summary judgment *de novo*. Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003). We apply Puerto Rico substantive law to this diversity action. See id. (applying state substantive law when sitting in diversity). Under Puerto Rico law, we accord the terms of a contract their plain meaning, reading the contract as a whole. Jewelers Mut. Ins. Co. v. N. Barquet, Inc., 410 F.3d 2, 16 (1st Cir. 2005).

### III. Application of the Agreement of Indemnity

Several weeks after issuance of the bond by AIICO to CAG, AIICO and C&M entered into a separate Agreement of Indemnity, which provided that

> The Principals and Indemnitors [C&M] shall exonerate, indemnify, and keep indemnified the Surety [AIICO] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured execution of the Bonds. . . . Payment by reason of the aforesaid causes shall be made to the surety by the Principals and Indemnitors as soon as liability exists or is asserted against the Surety whether or not the Surety shall have made payment therefor. . . . In the event of any payment by the Surety the Principals and Indemnitors further agree that in any accounting between the Surety and the Principals, . . . the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed . . . .

-11-

(Appellant's App. at 138.)  Because the bond obligated AIICO "to pay the aforementioned amount on first demand by" CAG (id. at 165), the Agreement of Indemnity further required C&M as the Indemnitor to:

> immediately and upon the Surety's first written or simple demand (which shall be conclusive evidence that such sum is due and payable) pay to the Surety or place with the Surety (subject to the Bond amount) the sum required to make such payment without any question or delay and whether or not such demand is in the Indemnitor's opinion a proper demand.

(Id. at 140.)

Puerto Rico law recognizes the relationship between a surety and a debtor and requires a debtor to indemnify a surety even when the security is paid without the debtor's knowledge.  See 31 P.R. Laws Ann. § 4911.  Furthermore, Puerto Rico law "implicitly allows for a surety to compromise a debt."  U.S. Fid. & Guar. Co. v. PR Enters., No. 03-1338, 2005 WL 2244283, at *4 (D.P.R. Sept. 15, 2005) (relying on 31 P.R. Laws Ann. §§ 4911-13).  Generally, when an indemnity agreement gives a surety broad discretion to pay claims triggering the indemnity agreement, the only defense an indemnitor may raise against a claim by the surety for indemnification is that the surety committed fraud or collusion, or otherwise acted in bad faith in paying the claim.  See Fireman's Ins. Co. of Newark, N.J. v. Todesca Equip. Co., 310 F.3d 32, 35-36 & n.6 (1st Cir. 2002) (discussing Rhode Island law and noting

-12-

slight variations in other jurisdictions).[3]

Although we lack jurisdiction to disturb the district court's ruling that the bond was in actuality an unconditional guarantee, C&M argues that the district court's alleged error in that ruling makes the Agreement of Indemnity inapplicable.  In other words, according to C&M, there should have been, and there is, nothing to indemnify because AIICO should not have been required to pay CAG on the bond.  In limited circumstances third-party defendants "may raise on appeal claims of error based in the main action," where the "third-party liability . . . is entirely derivative of the [underlying] judgment . . ., and will cease to exist if that judgment is defeated." United States v. Lumbermens Mut. Cas. Co., 917 F.2d 654, 658 n.5 (1st Cir. 1990) (reversing third-party judgment against insurance agent in favor of insurer based on erroneous ruling that insurance policy provided coverage in underlying suit and refusing to disturb judgment holding insurer liable where insurer did not appeal underlying judgment). Separate and apart from appealing the underlying ruling, a third-party defendant may assert, as the basis for appealing the ruling against it on the third-party claim, that the underlying judgment was erroneous.  Id.  Thus, while we will not disturb (for

---

[3]Puerto Rico law allows a debtor to use against the surety those defenses it would have against the creditor, but only when the surety pays on a debt without informing the debtor. See 31 P.R. Laws Ann. § 4913.  C&M does not rely on this defense, and we do not address it.

jurisdictional reasons) the district court's judgment holding that the bond was an unconditional guarantee by AIICO, we can review the correctness of that ruling as a defense to C&M's liability under the indemnity agreement if C&M's liability is "entirely derivative" of CAG's judgment against AIICO. Id.

In this case, C&M's liability to AIICO is not entirely derivative of CAG's judgment against AIICO. In fact, its liability is not derivative of the underlying judgment at all. Even if AIICO had paid on CAG's demand before CAG filed suit, C&M would have been liable to indemnify AIICO under the very broad terms of the separate Agreement of Indemnification upon AIICO's good faith payment on the demand. The sweeping language can be reduced to five words: "If we pay -- you pay." Regardless of the correctness of the district court's underlying decision, the fact remains that AIICO did in fact pay on the bond. Even if we now found that ruling to be incorrect, it would not change the fact of payment or alter the judgment as between AIICO and CAG, which is now final as to those parties. See id. at 662 (refusing to grant relief from an erroneous judgment to a nonappealing party); Marin Piazza v. Aponte Roque, 909 F.2d 35, 39 (1st Cir. 1990) (dismissing as untimely an appeal brought by four defendants following the fifth defendant's successful appeal and noting that "the inescapable consequence of failure to appeal a judgment within the time allowed is that the judgment becomes final" as to the nonappealing party). AIICO would

-14-

still be out its payment on the bond. The Agreement of Indemnity clearly and unequivocally required C&M to indemnify AIICO upon AIICO's good faith payment on the bond based on AIICO's belief that it was liable on the claim, "or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed." (Appellant's App. at 138.) Thus, we need not, and do not, decide the correctness of the underlying judgment in favor of CAG against AIICO; either way, C&M is liable to AIICO under the Agreement of Indemnity because AIICO paid on CAG's demand.

We note that in ruling on the underlying claim between CAG and AIICO, the district court found the bond to be an unconditional letter of credit and that the two conditions precedent to liability on the letter of credit had been met, namely that (1) CAG provided written notice to AIICO prior to the expiration date of the bond, and (2) the written notification contained the amount to be paid and stated that C&M had not performed its contractual obligations. The district court did not address the defenses raised by C&M to justify its failure to pay on the Letter Agreement, nor did it need to, given its conclusion that the bond was an unconditional guarantee. See generally 38A C.J.S. Guaranty § 17 (2006) ("The general rule that where the principal contract is invalid the guaranty is rendered invalid does not apply where the contract of guaranty is an entirely separate and independent contract, such as

-15-

an absolute guaranty." (internal footnotes omitted)). The judgment granted to CAG against AIICO has no effect on the underlying disputes between CAG and C&M concerning C&M's liability (or lack thereof or defenses thereto) on the Letter Agreement.

C&M did not argue in its briefs that AIICO's payment on the bond was made in bad faith, but relied solely on its claim that the district court erred in holding that the AIICO bond was an unconditional guarantee. During oral argument, counsel for C&M argued that AIICO settled the CAG-AIICO appeal in bad faith because it did not first consult C&M before paying the settlement.

We generally do not address arguments made for the first time during oral argument, especially when the arguments are contrary to the arguments made in the briefs. See United States v. Pizarro-Berríos, 448 F.3d 1, 4 (1st Cir. 2006) ("We have consistently held that, except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived."). AIICO was not aware until oral argument that the issue of its good faith settlement of the appeal was at issue.

Even if we were to reach the merits of the bad faith argument, we could not agree that AIICO's settlement was made in bad faith. AIICO vigorously disputed its liability on the bond in the district court and filed an appeal of the final judgment against it. Whatever its reason for settling after filing its notice of appeal,

we cannot say that compliance with a judgment duly entered by a United States District Court evidences bad faith on the part of the losing party.

The district court properly granted summary judgment in favor of AIICO and against C&M based on the unambiguous and entirely separate Agreement of Indemnity. See Plaza Athénée, S.E. v. U.S. Fid. and Guar. Co., No. 01-2597, 2005 WL 1114368, at *9-10 (D.P.R. May 9, 2005) (granting partial summary judgment in favor of surety where surety settled claim with creditor without consulting debtor; nothing in the surety agreement limited surety's discretion or ability to respond to the creditor's claim).

## IV. Cross-Claims Dismissed as Subject to Mandatory Arbitration

Finally, C&M challenges the district court's dismissal of its cross-claims against CAG, in which C&M claimed that CAG had breached the Joint Venture Agreement. The Joint Venture Agreement between C&M and CAG included an arbitration clause, which stated:

> Any difference related to the interpretation or the execution of the present agreement will be settled in accordance with the Rules of Reconciliation and Arbitration of the International Chamber of Commerce, by a referee designated under the conditions provided by said rule. The arbitration will take place at Genéve, Switzerland, the applicable law being used i[s] the Canton of Genéve.

(Appellant's App. at 105.) C&M recognizes the enforceability of mandatory arbitration agreements, but argues that CAG waived its right to enforce arbitration by bringing the action against AIICO

on the bond in federal court, relying on <u>Jones Motor Co.</u> v. <u>Chauffeurs, Teamsters, & Helpers Local Union No. 633 of N.H.</u>, 671 F.2d 38, 42 (1st Cir.) ("[P]arties are free to waive their rights to arbitration under a contract and proceed to present their contractual dispute to a court."), <u>cert. denied</u>, 459 U.S. 943 (1982).

The importance of arbitration agreements in the commercial world, particularly related to international agreements, is indisputable. Congress enacted the Federal Arbitration Act (FAA) to

> promote[] a liberal federal policy favoring arbitration and [to] guarantee[] that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

<u>Campbell</u> v. <u>Gen. Dynamics Gov't Sys. Corp.</u>, 407 F.3d 546, 551-52 (1st Cir. 2005) (quoting 9 U.S.C. § 2) (alterations within internal quotation in original).

The district court determined that the bond was in actuality an unconditional guarantee, a determination that permitted the district court to avoid deciding whether C&M had breached either the Joint Venture Agreement or the Letter Agreement before it ordered AIICO to pay on the bond. Even if the district court was wrong in holding that the bond's character was independent of the Joint Venture Agreement, an issue we do not decide today, the fact

-18-

remains that the district court interpreted only the bond. It did not construe the Joint Venture Agreement or related amendments in holding AIICO liable on the bond. In bringing its original action against AIICO on the bond then, CAG did not invoke federal jurisdiction to decide issues related to the Joint Venture Agreement, and it did not waive its right to enforce the arbitration clause. Accordingly, the district court properly dismissed C&M's cross-claims because they are subject to mandatory arbitration.

## V. Summary

To the extent C&M attempts to appeal the underlying judgment in favor of CAG against AIICO, we dismiss that part of its appeal for want of jurisdiction. We affirm the district court's judgment holding that C&M was required to indemnify AIICO for the payment it made to CAG, including costs and attorneys fees pursuant to the July 13, 2005, order, and we affirm the district court's judgment dismissing without prejudice C&M's cross-claims against CAG because those claims are subject to mandatory arbitration. Costs of appeal are awarded to AIICO and CAG. As it now stands, CAG holds AIICO's money, and C&M is liable to indemnify AIICO for the amount AIICO has paid to CAG. Assuming the parties invoke arbitration, the correct distribution or allocation of those funds held by CAG as between CAG and C&M will be determined by the results of the arbitration proceedings in Genéve, in which CAG's claims against

-19-

C&M based on the Letter Agreement and C&M's dismissed cross-claims for breach of the Joint Venture Agreement should be resolved.

**Affirmed**.