# United States Court of Appeals
## For the First Circuit

No. 12-2190

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTIAN ORTIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Selya, Stahl and Lipez,

Circuit Judges.

Hector L. Ramos-Vega, Assistant Federal Public Defender, Supervisor, Appeals Division, with whom Hector E. Guzman, Jr., Federal Public Defender, and Patricia A. Garrity, Assistant Federal Public Defender, were on brief, for appellant.
John A. Mathews II, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

January 27, 2014

**SELYA, Circuit Judge.** Federal Rule of Criminal Procedure 35(a) permits the filing of a post-judgment motion to correct a sentence within 14 days of its imposition. But what happens when a defendant's timely notice of appeal follows such a motion but predates any action on the motion by the district court? It is an open question in this circuit whether that notice of appeal, unamended, suffices to allow appellate review of an ensuing denial of the Rule 35(a) motion. We hold that the original notice of appeal, unamended, does not create appellate jurisdiction to review the district court's subsequent disposition of the Rule 35(a) motion. In order to test the post-appeal denial of Rule 35(a) relief, the defendant must either amend his original notice of appeal or file a new notice of appeal.

It is trite but true that he who wins the battle does not always win the war. So it is here: although we lack jurisdiction to review the allegedly incorrect denial of Rule 35(a) relief, we nonetheless have jurisdiction to review the defendant's separate claim of procedural error in the imposition of the sentence itself. Exercising that jurisdiction, we conclude that the district court committed plain error in its imposition of the sentence. Accordingly, we vacate the sentence and remand for resentencing.

Because this appeal follows a guilty plea, the plea agreement, change-of-plea colloquy, unchallenged portions of the presentence investigation report (PSI Report), and transcript of

the disposition hearing define the factual contours of our analysis. See United States v. Ocasio-Cancel, 727 F.3d 85, 88 (1st Cir. 2013).

We scroll back to April 29, 2011, when defendant-appellant Christian Ortiz failed to appear in a local Puerto Rican court for sentencing in a drug-possession case. The court, undeterred by the defendant's disappearing act, sentenced him in absentia to serve a two-year term of immurement. The court did not stop there: it also issued a warrant for the defendant's arrest and found him guilty, on the spot, of the crime of contempt of court.

For nearly six months thereafter, the defendant eluded capture. The long arm of the law eventually ensnared him, and he was arrested with a stash of ammunition in his possession. The scene then shifted to a federal forum: a grand jury sitting in the District of Puerto Rico returned an indictment against the defendant that charged him with possession of ammunition by a convicted felon. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). Within a matter of months, the defendant executed a plea agreement and entered a guilty plea.

In due course, the probation department prepared the PSI Report, which recommended a guideline sentencing range (GSR) of 21 to 27 months. This recommendation contemplated a total offense level of 12 and a criminal history category of IV. Included in the

underlying criminal history score were two points for the defendant's in absentia contempt conviction.

The district court convened the disposition hearing on August 29, 2012. Defense counsel argued that the contempt conviction had been imposed in violation of Puerto Rico laws requiring that, prior to conviction, a defendant be given notice and an opportunity to be heard. See P.R. Laws Ann. tit. 34, App. II, R. 242(b). The district court refused to lower the GSR on this basis. It then concluded that the defendant's actions warranted "a small variance" from the GSR and imposed a 36-month incarcerative sentence.

Thirteen days later, defense counsel filed a "Motion To Reconsider Judgment and Sentence." Having ascertained that the Commonwealth court had vacated the contempt conviction prior to the federal court disposition hearing, counsel prayed for a lesser sentence based on a revised GSR. The motion papers explained that subtracting the two criminal history points attributable to the dismissed contempt conviction would result in a criminal history category of III (not IV) and a GSR of 15 to 21 months.

The next day, defense counsel filed the instant notice of appeal. It described the matter appealed as "the Judgment and Sentence entered against [the defendant] on August 30, 2012."

-4-

A month elapsed before the district court denied the defendant's post-judgment motion.[1] At that point, the defendant neither filed a further notice of appeal nor amended the original notice to include the district court's more recent order.

During the briefing phase of this appeal, the parties proceeded as though both the sentence and the post-judgment order were before us. At oral argument, we questioned our jurisdiction over the latter order and directed the submission of supplemental briefs. Those briefs were duly filed.

Against this backdrop, we first inquire into the extent of our jurisdiction. To conduct this inquiry, we must determine the character of the defendant's post-judgment motion. Ascertaining a motion's character depends upon its substance, not its appellation. See United States v. Moran, 393 F.3d 1, 9 (1st Cir. 2004); United States v. Morillo, 8 F.3d 864, 867 (1st Cir. 1993).

Viewed through the lens of substance, the raiment of Federal Rule of Criminal Procedure 35(a) perfectly suits the motion. That rule allows a district court to "correct a sentence that resulted from arithmetical, technical, or other clear error" within 14 days of the pronouncement of the sentence. Fed. R. Crim.

---

[1] Contrary to the government's importunings, the notice of appeal did not divest the district court of authority to rule on the post-judgment motion. The post-judgment motion was the functional equivalent of a Rule 35(a) motion, see text infra, and Federal Rule of Appellate Procedure 4(b)(5) permits a district court to adjudicate a Rule 35(a) motion even after the filing of a notice of appeal.

P. 35(a), (c). Here, the defendant filed the post-judgment motion within the prescribed time frame. Moreover, the motion sought to correct a clear error: the inclusion of a dismissed conviction in computing the defendant's criminal history score. This is a paradigmatic example of the type of bevue that Rule 35(a) was designed to address. See, e.g., Morillo, 8 F.3d at 868. Elevating substance over form, we conclude that the post-judgment motion should be treated as a motion under Rule 35(a).

So characterized, the district court had authority to rule on the post-judgment motion despite the earlier filing of the defendant's notice of appeal. See Fed. R. App. P. 4(b)(5); see also supra note 1. Nevertheless, the district court's order denying the motion is not properly before us. We explain briefly.

It is common ground that our review of a district court's order is circumscribed by the filed notice of appeal. This notice must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Rule 3's designation requirement is mandatory, jurisdictional, and not susceptible to waiver. See Constructora Andrade Gutiérrez, S.A. v. Am. Int'l Ins. Co., 467 F.3d 38, 43 (1st Cir. 2006). It follows that a "party's failure to designate a particular order for appeal ordinarily defeats a later attempt to dispute that order in the court of appeals." Shelby v. Superformance Int'l, Inc., 435 F.3d 42, 45 (1st Cir. 2006).

To be sure, there is some play in the joints. See Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 3 (1st Cir. 2002) (explaining that notices of appeal are to be construed liberally in the context of the record as a whole). In the last analysis, however, Rule 3's core dictates "must still be satisfied, and 'non-compliance is fatal to an appeal.'" In re Spookyworld, Inc., 346 F.3d 1, 6 (1st Cir. 2003) (quoting Smith v. Barry, 502 U.S. 244, 248 (1992)); accord United States v. Velez Carrero, 140 F.3d 327, 330 (1st Cir. 1998). When all is said and done, an inquiry into compliance with Rule 3(c)(1)(B) asks whether a particular notice of appeal, as informed by the case record in its entirety, sufficiently manifests an intent to appeal the order in question. See Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 26-27 (1st Cir. 2012).

In the case at hand, nothing about the defendant's notice of appeal manifests an intention to contest the outcome of the Rule 35(a) motion — an outcome that remained uncertain on the day the notice was filed. The notice designated for appeal only the district court's "Judgment and Sentence entered against [the defendant] on August 30, 2012" and omitted any mention of the Rule 35(a) motion, let alone any mention of a disposition of that motion. Nor did the defendant anticipatorily signal an intent to contest the outcome of the post-judgment motion once the district court disposed of it.

-7-

This is not to say that the defendant was powerless to incorporate the denial of his Rule 35(a) motion into his appeal. For one thing, he could have amended his pending notice of appeal to cover the subsequent ruling. See, e.g., Constructora Andrade Gutiérrez, 467 F.3d at 44. For another thing, he could have filed a second (supplemental) notice of appeal directed exclusively to that ruling. But the defendant pursued neither of these easily available alternatives. Under such circumstances, we are without jurisdiction to review the district court's denial of Rule 35(a) relief.[2] See, e.g., United States v. Cartwright, 413 F.3d 1295, 1299-1300 (11th Cir. 2005) (per curiam).

Our determination that we lack jurisdiction to review the district court's denial of the defendant's Rule 35(a) motion does not end the matter. We do have jurisdiction, under the filed

---

[2] In an attempt to convert dross into gold, the defendant invites us to consider his post-judgment motion as a motion for reconsideration, simpliciter. We decline this invitation: motions for reconsideration in criminal cases are not specifically authorized either by statute or by rule. See United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010). To the extent that such motions are viable at all, they rely on the "traditional and virtually unquestioned practice" of district courts exercising their inherent authority to revisit their own orders. United States v. Dieter, 429 U.S. 6, 8 n.3 (1976) (per curiam) (internal quotation marks omitted). However, for motions — like this one — that fall squarely within the purview of Rule 35(a), a district court's authority to grant relief stems solely from that rule's positive law, not from any inherent power. See United States v. Griffin, 524 F.3d 71, 83 (1st Cir. 2008); United States v. Fahm, 13 F.3d 447, 453 (1st Cir. 1994). "[T]here is simply no such thing as a 'motion to reconsider' an otherwise final sentence . . . ." United States v. Dotz, 455 F.3d 644, 648 (6th Cir. 2006).

notice of appeal, to review the sentence itself. See 18 U.S.C. § 3742(a). Even so, there is a rub: while the defendant argued at sentencing that his contempt conviction was invalid and unworthy of inclusion in his criminal history score, the touchstone of his current argument — the Commonwealth court's vacation of the contempt conviction — was not brought to the district court's attention at that time.

The defendant's failure, at the disposition hearing, to articulate his best argument in support of disregarding the contempt conviction affects our standard of review. By leaving the district court in the dark as to that argument, the defendant forfeited it. But forfeited arguments are not entirely unreviewable; rather, forfeited arguments may be reviewed for plain error. See United States v. Dávila-González, 595 F.3d 42, 47 (1st Cir. 2010). We proceed accordingly.

The plain error standard, though rigorous, is not insurmountable. Review thereunder "entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

The government concedes that the first two elements of this standard are satisfied, and it is easy to see why. The

dismissed contempt conviction, which the defendant had argued was contrary to Puerto Rico law, manifestly should not have been included in computing the defendant's criminal history score. See, e.g., Mateo v. United States, 398 F.3d 126, 136 (1st Cir. 2005) (explaining that convictions reversed for errors of law should not be counted under the federal sentencing guidelines); USSG §4A1.2, comment. (n.6) (excluding reversed, vacated, or invalidated convictions from criminal history computation). In addition, the inappropriateness of including a vacated conviction in the computation of a defendant's criminal history score is readily evident.[3]

We think it equally clear that the third element of the plain error standard is satisfied. In a sentencing appeal, the plain error standard imposes upon the appealing defendant the burden of showing a reasonable likelihood "that, but for the error, the district court would have imposed a different, more favorable sentence." United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir. 2006). The defendant has carried this burden here.

---

[3] This conclusion is unaffected by the fact that the district court did not know, at the time of sentencing, that the contempt conviction had been vacated. Judicial review for plain error is retrospective; an inquiring court must ask whether, given what is known at the time of direct appellate review, the district court's hypothetical rejection of the forfeited argument would have constituted clear and obvious error. See, e.g., Henderson v. United States, 133 S. Ct. 1121, 1124-25 (2013).

At the disposition hearing, the district court indicated that it would "do a small variance" from the GSR of 21 to 27 months and "raise th[e sentence] to 36 months."  In all likelihood, the court considered its variance from the GSR "small" due to the ratio between the sentence and the top of the GSR.  Eliminating the contempt conviction would have the effect of lowering the top of the GSR from 27 months to 21 months, which would substantially increase the sentence-to-GSR ratio.  We think it doubtful that the district court, working with a properly calibrated GSR, would still have considered a nine-month variance "small."  After all, a nine-month variance from a GSR of 21 to 27 months extended the term of imprisonment by only 33-1/3% over the top of the range, whereas a nine-month variance from a GSR of 15 to 21 months would extend the term of imprisonment by nearly 50% over the top of the range. Given this arithmetic, we deem it reasonably likely that correcting the error in the criminal history score calculation would have yielded a more lenient sentence.[4]

In an effort to dodge this bullet, the government tries to hide behind the district court's unflattering description of the

_____

[4] There are, of course, other ways to look at the question of prejudice.  We do not canvass them because, in this instance, all roads lead to Rome.  We do, however, illustrate the point by noting that the 36-month sentence represented a 33-1/3% increase over the top of the erroneously calculated GSR; yet such a sentence would extend the defendant's term of imprisonment by more than 70% over the top of the correct GSR.  This illustration offers yet another reason to believe that shrinking the GSR will likely lead to a lower sentence.

defendant's conduct. It strives to convince us that those aggravating factors, not the parameters of the GSR, formed the impetus for the 36-month sentence. We are not persuaded. Although the aggravating factors doubtless sparked the district court's decision to vary upward from the GSR, there is every reason to believe that the court used the GSR as an anchoring point from which to vary. Here, then, a calculation error that artificially increases the GSR is unlikely to be harmless. See United States v. Fagans, 406 F.3d 138, 141 (2d Cir. 2005) (explaining that an incorrectly calculated GSR often taints "a non-Guidelines sentence, which may have been explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference").

        In this regard, the government's reliance on our decision in United States v. Tavares, 705 F.3d 4 (1st Cir.), cert. denied, 134 S. Ct. 450 (2013), is mislaid. There, the district court was confronted with two conflicting GSR calculations and explicitly stated that its sentence did not depend on the choice between them. See id. at 24. Nothing comparable occurred in this case; the record contains no suggestion that the court considered the dimensions of the GSR to be irrelevant. We have explained before, and today reaffirm, that a sentencing court's decision to vary from the guidelines does not — absent a clear statement by the court to the contrary — diminish the potential of the GSR to influence the

sentence actually imposed.  See United States v. McGhee, 651 F.3d 153, 159 (1st Cir. 2011).

The fourth element of the plain error standard need not detain us.  A sentence grounded in part upon a criminal history score that includes a vacated conviction would seriously impair the fairness and public perception of judicial proceedings.  Due process "guarantees every defendant a right to be sentenced upon information which is not false or materially incorrect."  United States v. Tavano, 12 F.3d 301, 305 (1st Cir. 1993) (internal quotation marks omitted).  Where, as here, such erroneous information materially influences the sentencing calculus, the error threatens the basic integrity of the sentencing process. See, e.g., United States v. González-Castillo, 562 F.3d 80, 83-84 (1st Cir. 2009).

We need go no further.  For the reasons elucidated above, the defendant's sentence is vacated and the matter is remanded for resentencing.

**Vacated and Remanded.**